ARTHUR E. RENFRO, SR. V. STATE.

No. 25397.  June 27, 1951.
Rehearing Denied October 24, 1951.

Hon. Owen M. Lord, Judge Presiding.

D. F. Sanders, J. A. Veillon, Beaumont, and Horace H. Shelton, Austin, for appellant.

Ramie H. Griffin, Criminal District Attorney, Joe B. Goodwin, Assistant Criminal District Attorney, Beaumont, and George P. Blackburn, State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted for the murder of his wife, and the jury assessed his punishment at 25 years in the penitentiary.

The killing occurred in the city of Port Arthur in front of Ship's Bell Cafe, a beer tavern, about midnight. Appellant is a sea-faring man who had recently returned home after a six-months' voyage as first mate on a Texas Company ship.

Following a visit to other beer taverns and inns, appellant and the deceased, in company with Flora Hightower and her husband, L. Hightower, went to Pete's Place, and there became involved in an argument during which appellant twisted his wife's arm and she in turn threw a beer bottle at him and he left. The four soon reassembled at a place called French Village, where, after some kind of a scuffle, appellant secured the keys to their car and left.

Sometime later, the deceased and the Hightowers returned to Ship's Bell, where they had been earlier. Appellant thereafter came in with a pistol which had been kept in the glove compartment of their car and which he had unloaded. He was snapping the pistol at the table where the deceased and the

Hightowers were seated, and other patrons ran out of the place. He again left the Ship's Bell. Some 15 or 20 minutes later, appellant returned and said to the deceased, "Let's go home," to which she replied, "O.K."

According to the state's testimony, appellant was pushing the deceased as they left the building, and as they got outside, she backed up against the wall. Appellant then backed away from her and fired a bullet through her heart with the pistol. Mr. Hightower then ran to appellant and was still attempting to wrest the pistol from him when the arresting officers arrived. A second shot had been fired during the struggle which did no damage.

Appellant signed a statement in which he said that he "blacked out" at the French Village and the next thing he remembered was when he was fighting over the gun. He also told the arresting officer, "I killed my wife and I will have to pay the penalty, and I don't know why I killed her."

On the trial, however, appellant testified that the gun was accidentally discharged when the deceased was attempting to take it from him. He explained that he had reloaded the gun with the intention of disposing of it.

It was also shown that the deceased, on a previous occasion, had shot appellant with the pistol and had recently threatened to kill him, and that such threat had been communicated to appellant.

Appellant first complains of the overruling of his motion for new trial based upon the contention that one of the jurors was unable to read and write and was therefore disqualified under the provisions of Article 616, Section 14, C.C.P. Testimony was heard on the motion, and without discussing the same, we think that the evidence is sufficient to sustain a finding by the trial judge that the illiteracy of the juror was known to appellant's counsel at the time the juror was accepted.

That a juror cannot read and write is a reason for challenge which may be waived, only the third, fourth, and fifth grounds of challenge in Article 616, supra, being absolute disqualifications. See Art. 619, C.C.P.

We are unable to agree that the trial court erred in con-

cluding that the ground of challenge for cause was waived. See Lowe v. State, 88 Tex. Cr. R. 316, 226 S.W. 674; Powers v. State, 69 Tex. Cr. R. 494, 154 S.W. 1020.

Appellant excepted to the charge because of the omission of an instruction on communicated threats.

As we view the testimony, the issue as to self-defense against apparent danger and threats was not raised, and the trial court was not called upon to charge the contents of Article 1258, Vernon's P. C. Appellant testified that the deceased attempted to take the pistol from him and in the attempt the shot was accidentally fired. He made no claim that in killing the deceased, he was acting in self-defense, believing that from any act then done she was about to execute her threat to take his life. The court was quite liberal in submitting to the jury the law of self-defense and negligent homicide, in addition to his defense of accident, and appellant's right were fully protected by the charge.

Bill No. 2 is multifarious and cannot be considered. It complains that the state was permitted to prove over objection: (1) that appellant had been married five times; (2) that he did not get any of the divorces; and (3) that the state was permitted to go into the details of the property settlements made in the divorce cases.

Bill No. 3 complains that the trial court declined to instruct the jury to disregard the testimony of Flora Hightower as to a statement made to her by the deceased shortly prior to the homicide, and in the absence of appellant, requesting the witness to see that her mother was taken care of if anything happened. The objection was first made after the witness had answered, and no reason is shown for not objecting timely thereto. The bill is insufficient to show reversible error in the court's refusal to strike the testimony. See Williams v. State, 145 Tex. Cr. R. 406, 168 S.W. (2d) 261; Wilson v. State, 87 Tex. Cr. R. 538, 223 S.W. 217; McCulley v. State, 103 Tex. Cr. R. 126, 280 S.W. 223.

Bill No. 4 complains of a remark of the district attorney made in the presence of the jury to the effect that a state's witness whom he was attempting to impeach had changed her story. The court instructed the jury to disregard the remarks. We are unable to agree that the matter was of such a serious nature as to require that a mistrial be declared.

Bill No. 5 relates to the closing argument of the district attorney wherein he was replying to the question of appellant's counsel as to why certain witnesses were not available. The district attorney had stated that he had the grand jury statements of such witnesses and if counsel would agree, he would let the jury have them. Appellant's counsel interrupted the argument, rather than objecting thereto, and inquired, "Was I there when you took that?" The district attorney, following such inquiry, argued, "That's the point. You know what your grand jury is. It is composed of men just like you. Twelve men who sit there, and they are not going to browbeat any witness." The bill complains of the district attorney's statement that the grand jury "was not going to browbeat a witness" as being "testimony on the part of the district attorney, and was outside of the record."

In the light of the evidence, the punishment, and the objection made, we are convinced that the complained-of remarks were not of a nature warranting a reversal of the conviction.

The evidence is sufficient to sustain the conviction, and no reversible error is found in the record.

The judgment is affirmed.

Opinion approved by the court.

ON MOTION FOR REHEARING.

MORRISON, Judge.

Appellant has made our reconsideration of this case on rehearing most difficult by predicating his claim for reversal on "Points" rather than upon bills of exception. We have finally located the bills of exception which apply to his "Points" and shall discuss them by number in the order urged.

Bill of Exception No. 6 reflects that defendant's counsel in his argument to the jury questioned the failure of the state to produce certain witnesses and commented on the ease with which their attendance could have been secured, and in so doing pointed at the district attorney and asked why they were not available. Thereafter, in his closing argument, the district attorney offered to make available to the jury certain sworn statements and grand jury testimony of such witnesses, if counsel for the appellant would agree.

It will be noted that this is not, as in the cases cited by appellant, any argument by the district attorney relating to any objection appellant may have made during the course of the trial to inadmissible evidence. Attention is further directed to the failure of the appellant to move the court to instruct the jury not to consider the statement of the district attorney.

Bill of Exception No. 1 complains of the trial court's failure to grant a new trial when it was discovered that one of the jurors could not read or write. We held in the original opinion that counsel for appellant knew of the juror's alleged lack of literacy at the time of his selection and thereby waived such qualifications. We based this upon the testimony of the juror that he had so informed counsel for appellant, under the most revolting circumstances, prior to the trial, and that counsel had replied, "Well, that don't make a hell of a lot of difference."

Bill of Exception No. 3 shows the following:

1. The answer of the witness.

2. That after the witness had answered there was an objection.

3. That after the objection there was a request that the jury be instructed to disregard the answer.

4. That the court refused to so instruct.

The bill does not show when the objection was made, that is, how long after the witness had answered, nor does it show why no objection was made before the answer was given.

In Wilson v. State, 87 Tex. Cr. R. 538, 223 S.W. 217, we said:

"Bill of exceptions No. 6 shows that after a question was asked, and answered without objection or claim that there was any misunderstanding, or reason for not objecting before the answer, the court refused appellant's request to withdraw said answer. It has often been held, in cases of this character, that this action of the court is correct."

See also Brown v. State, 155 Tex. Cr. R. Rep. 347, 235 S.W. (2d) 142.

Unless fundamental error is shown, we feel that the above rule should prevail.

Bill of Exception No. 2 shows on its face that it was directed at three separate and distinct matters and therefore presents nothing for our review.

Being of the opinion that we properly disposed of this cause originally, the appellant's motion for rehearing is overruled.